UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOEL CAHN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 11 C 6082 |
| THE CITY OF HIGHLAND PARK, | ) |
| NANCY ROTERING, and | ) Judge John W. Darrah |
| MICHAEL BLUE, | ) |
| | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Joel Cahn filed a Complaint against the City of Highland Park (the "City"), Nancy Rotering, and Michael Blue (collectively, the "Defendants"), arising from the reconstruction of a fence by Cahn on his property in Highland Park, Illinois. Count I alleges a violation of Fourth Amendment rights pursuant to 42 U.S.C § 1983. Count II alleges a violation of the Equal Protection Clause of the Fourteenth Amendment. Counts III through V allege state-law claims for malicious prosecution, trespass to property, and intentional infliction of emotional distress, respectively.

## BACKGROUND

The following facts are taken from Cahn's Complaint and are accepted as true for purposes of resolving this Motion to Dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Prior to September 1, 2010, Cahn resided at 26 Lakeview Terrace, Highland Park, Illinois. (Compl. ¶ 6.) During this time, Nancy Rotering was a member of the City Counsel and an immediate neighbor of Cahn.

(*Id.* ¶ 7.) Michael Blue was the Director of Community Development, in charge of enforcing City Building Code ("the Code") violations for the City. (*Id.* ¶ 8.)

In May 2009, Cahn applied for and was granted a permit by the City to construct a replacement fence along the southern border of his property; Cahn subsequently constructed the replacement fence. (*Id.* ¶¶ 9, 10.) On December 17, 2009, the City inspected and approved the fence. (*Id.* ¶ 12.) Soon thereafter, Larry Klairmont, a neighbor, living on property that borders the replacement fence, and who has close ties to Rotering, complained to the City that the replacement fence was in violation of the Code (the "Klairmont complaint"). (*Id.* ¶ 13.)

Blue was assigned to investigate the Klairmont complaint. (*Id.* ¶ 14.) Blue spoke to his inspectors, and because the permit had been issued, Blue closed the Klairmont complaint on December 22, 2009. (*Id.* ¶ 14.) Subsequently, Rotering requested that the Community Department Building Division reopen the Klairmont complaint. (*Id.* ¶ 15.) On February 21, 2010, the City sent a letter to Cahn, stating that his fence violated the Code and threatened daily fines of up to $500.00. (*Id.* ¶ 16.) The matter was assigned to City Building Inspector Timothy Fisher, who concluded that the fence was in compliance with the Code and recommended to his supervisor, Blue, that the Klairmont complaint be closed. (*Id.* ¶¶ 17-18.)

On May 27, 2010, the City sent Cahn a letter, stating that his replacement fence was in compliance with the Code. (*Id.* ¶ 19.) After this letter was sent, Rotering intervened and directed that the Klairmont complaint be reopened. (*Id.* ¶ 20.) In July 2010, Rotering and Blue personally inspected the fence. (*Id.* ¶ 21.) In August of 2010, Fisher, accompanied by another City inspector, Steve Hazer, re-inspected the

replacement fence, and after Cahn made voluntary modifications, recommended to Blue that the Klairmont complaint be closed. (*Id.* ¶ 22.)

On September 1, 2010, Cahn received a violation notice from the City, stating that Cahn's fence was in violation of the Code. (*Id.* ¶¶ 23-24.) On December 9, 2010, the City sent personnel to Cahn's property to take detailed measurements and photographs of the replacement fence without Cahn's permission. (*Id.* ¶ 25.) The violation was heard before Administrative Judge Kenneth Good, who found Cahn not liable and thus dismissed the complaint on June 2, 2011. (*Id.* ¶ 26.)

## LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotations omitted). When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed in the light most favorable to the plaintiff; all well-pleaded factual allegations are accepted as true, and all reasonable inferences are construed in the plaintiff's favor. *Id.* However, a complaint must allege "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007) (*Twombly*). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Thus, "threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Further, the amount of factual allegations required to state a plausible claim for relief depends on the complexity of the legal theory alleged. *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

## ANALYSIS

### *Count I*

In Count I, Cahn alleges that Defendants entered his property without permission and violated his Fourth Amendment right under 42 U.S.C. § 1983 to be free from unreasonable searches or seizures. (Compl. ¶¶ 28-31). Cahn alleges that his injuries include "the deprivation of his property" and that these constitutional violations proximately caused him "great mental anguish and humiliation, exposed him to public scandal and disgrace, and caused him to incur various expenses." (*Id.* ¶ 31.)

"Section 1983 creates a federal cause of action for the 'deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Finwall v. City of Chicago*, 490 F. Supp. 2d 918, 921 (N.D. Ill. 2007) (quoting 42 U.S.C. § 1983). A claim under § 1983 requires that "(1) the defendant acted under the color of state law or invoked state authority, and (2) deprived the plaintiff of a constitutionally protected right." *Id.*; *see also Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006).

Cahn has failed to plausibly allege that he was deprived of a constitutionally protected right. The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. IV Amend. "It is a basic principle of

4

Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *See Payton v. New York*, 445 U.S. 573, 585 (1980). The Fourth Amendment's protections are "not limited to the four walls of one's home, but extend[ ] to the curtilage of the home as well." *See United States v. French*, 291 F.3d 945, 951 (7th Cir. 2002). Therefore, here, Cahn's yard and the fence thereon fall under the protection of the Fourth Amendment. *United States v. Hedrick*, 922 F.2d 396, 399 (7th Cir. 1991) (recognizing "that the yard of a residential home is within the curtilage of the house.").

However, Cahn claims, based on the above alleged facts, that the Defendants conducted searches of Cahn's property without consent. Cahn alleges only one instance in which the Defendants, or someone acting on their behalf, inspected his fence without his permission, as discussed below. Although Cahn's Complaint is not a model of clarity, inspections on December 17, 2009, July 2010, and August 2010 appear to have been authorized. (*See* Compl. ¶¶ 12, 18, 22.) Cahn alleges that on December 17, 2009, the City "inspected and approved" the fence. (*Id.* ¶ 12.) Cahn also alleges that in August 2010, "Timothy Fisher and Steve Hazer re-inspected the fence" and recommended "to their superior Michael Blue, that the matter be closed and that potential code violations issues were resolved." (*Id.* ¶ 22.) Cahn's Complaint "'read . . . liberally, in its entirety, and with every inference drawn in favor'" of Cahn indicates that these inspections were conducted with Cahn's permission.[1] *Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1393 (7th Cir. 1993). In both inspections, the context of these

---

[1] Even if they were without Cahn's permission, his claim would fail for the reasons stated below.

5

allegations – favorable results for Cahn – supports the conclusion that these entries were with Cahn's permission.

Furthermore, Cahn alleges that in July 2010, Rotering and Blue "personally inspected the fence." (*Id.* ¶ 21.) Cahn does not allege that Rotering or Blue actually *entered* his property when they inspected the fence. Because the inspections in December 2009 and August 2010 were with Cahn's permission and the inspection in July 2010 did not involve entrance onto his property, Cahn has failed to allege Fourth Amendment violations based on these inspections.[2]

Cahn only alleges that on December 9, 2010, individuals, acting on behalf of the City, took "detailed measurements and photographs of said fence *without the permission of*" Cahn. (*Id.* ¶ 25 (emphasis added).) But Cahn's claim fails because he has not sufficiently alleged that the Defendants caused any damage to his property. "[T]he Fourth and Fourteenth Amendments provide a remedy when a citizen's property is unreasonably damaged during a search." *Cf. Heft v. Moore*, 351 F.3d 278 (7th Cir. 2003) (dismissing plaintiff's Fourth Amendment unreasonable-search claim because she "failed to show that her property was damaged at all."); *see also Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011). Cahn has made no allegations that his property was damaged. It is not plausible that an entry onto this property by the City's inspectors in which they took measurements and photographs could have damaged his property. *Twombly*, 544 at 545, 570 ("[D]etailed factual allegations" are not required, but the plaintiff must allege facts that "state a claim to relief that is plausible on its face" and

---

[2] Even if Cahn alleged that Rotering and Blue entered Cahn's property, his claim would fail for the reasons stated below.

raise the possibility of relief above the "speculative level."). Accordingly, Defendants' Motion to Dismiss is granted as to Count I.

*Count II*

In Count II, Cahn alleges that the City's enforcement of the Code with respect to Cahn's fence violated his rights to equal protection under the Fourteenth Amendment. Cahn concedes that he is alleging a "class-of-one claim" under the Equal Protection Clause. A class-of-one claim may arise when a defendant "irrationally targets an individual for discriminatory treatment." *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010) (*Reget*). "In order to bring a class of one equal protection claim, a plaintiff must allege that (1) he has been intentionally treated differently from others similarly situated and (2) there is no rational basis for the difference in treatment, or that the differential treatment is due to a totally illegitimate animus toward the plaintiff by the defendant." *Id.*

Cahn has failed to identify similarly situated persons who were treated differently. *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 941 (7th Cir. 2010) (*LaBella*). "To be similarly situated for purposes of a class-of-one equal-protection claim, the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in all material respects. *Reget*, 595 F.3d at 695. In *LaBella*, the Seventh Circuit affirmed the trial court's decision to grant a motion to dismiss a class-of-one claim where the plaintiff, a restaurant owner, failed to properly identify similarly situated restaurants that were treated favorably. Although the plaintiff did identify two purportedly similarly situated restaurants, the Court of Appeals held that the restaurants were not "*prima facie* identical to LaBella in all material respects." *LaBella*, 628 F.3d. at

7

942. In this case, Cahn has failed to identify a single person that is similarly situated to him, let alone to explain how they are "identical . . . in all material respects." Because Cahn has failed to satisfy the first element of a class-of-one claim, Defendants' Motion to Dismiss is granted as to Count II.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is granted as to Counts I and II without prejudice. Cahn may file an amended complaint as to Counts I and II consistent with the requirements of Federal Rule of Civil Procedure 11 within 30 days of the entry of this Order. As those dismissed Counts I and II alone support federal jurisdiction, Defendants' Motion to Dismiss Counts III through V is denied without prejudice. The case is continued to 4/24/12 at 9:30 a.m. for status.

Date: 3-14-12

JOHN W. DARRAH
United States District Court Judge