UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOEL CAHN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) Case No. 11 CV 06082 | |
| THE CITY OF HIGHLAND PARK, ) | |
| NANCY ROTERING, and ) Judge John W. Darrah | |
| MICHAEL BLUE, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Joel Cahn filed an Amended Complaint against the City of Highland Park (the "City"), Nancy Rotering, and Michael Blue (collectively, the "Defendants"), arising from the reconstruction of a fence by Cahn on his property in Highland Park, Illinois. In a March 14, 2012 Order, Cahn's original Complaint was dismissed without prejudice. *Cahn v. City of Highland Park*, No. 11-C-6082, 2012 WL 917855, at * 6 (N.D. Ill. Mar. 14, 2012) (*Cahn*). Count I alleges a violation of Fourth Amendment rights pursuant to 42 U.S.C. § 1983. Count II alleges a violation of the Equal Protection Clause of the Fourteenth Amendment. Counts III through V allege state-law claims for malicious prosecution, trespass to property, and intentional infliction of emotional distress, respectively. Count VI alleges a claim of retaliation by the Defendants against Cahn.

### BACKGROUND

The following facts are taken from Cahn's Amended Complaint and are accepted as true for the purposes of resolving this Motion to Dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Prior to September 1, 2010, Cahn resided at

26 Lakeview Terrace, Highland Park, Illinois. (Am. Compl. ¶ 6.) During this time, Nancy Rotering was a member of the City Counsel and an immediate neighbor of Cahn. (*Id.* ¶ 7.) Michael Blue was the Director of Community Development, in charge of enforcing City Building Code ("the Code") violations for the City. (*Id.* ¶ 8.)

In May 2009, Cahn applied for and was granted a permit by the City to construct a replacement fence along the southern border of his property; Cahn subsequently constructed the replacement fence. (*Id.* ¶¶ 9, 10.) Cahn claims the replacement fence was identical in height, in length, and in location to the original fence. (*Id.* ¶ 10.) On December 17, 2009, the City inspected and approved the fence. (*Id.* ¶ 12.) Soon thereafter, Larry Klairmont, a neighbor, living on property that borders the replacement fence, and who Cahn claims has close ties to Rotering, complained to the City that the replacement fence was in violation of the Code (the "Klairmont complaint"). (*Id.* ¶ 13.)

Blue was assigned to investigate the Klairmont complaint. (*Id.* ¶ 14.) Blue spoke to his inspectors and, because the permit had been issued in 1967 for the original fence, closed the complaint on December 22, 2009. (*Id.* ¶ 14.) Subsequently, Rotering requested that the Community Department Building Division reopen the Klairmont complaint. (*Id.* ¶ 15.) On February 21, 2010, the City sent a letter to Cahn, stating that the fence violated the Code because of its height and threatened daily fines of up to $500.00 per day. (*Id.* ¶ 16.) The matter was assigned to City Building Inspector Timothy Fisher, who concluded that the fence was in compliance with the Code and recommended to his supervisor, Blue, that the Klairmont complaint be closed. (*Id.* ¶¶ 17-18.)

On May 27, 2010, the City sent Cahn a letter, stating that the fence was in compliance with the Code. (*Id.* ¶ 19.) After this letter was sent, Rotering intervened and directed that the

Klairmont complaint be reopened. (*Id.* ¶ 20.) In July 2010, Rotering and Blue personally inspected the fence. (*Id.* ¶ 21.) In August 2010, Fisher, along with City Inspector Steve Hazer, re-inspected the replacement fence. (Id. ¶ 22.) Following the inspection and minor voluntary modifications made by Cahn, Fisher and Hazer recommended to Blue that the Klairmont complaint be closed. (*Id.*)

On September 1, 2010, Cahn received a violation notice from the City, stating that Cahn's fence was in violation of the Code. (*Id.* ¶¶ 23-24.) On December 9, 2010, the City sent personnel to Cahn's property to take detailed measurements and photographs of the replacement fence without Cahn's permission. (*Id.* ¶ 25.) In order to take the measurements and photographs, City officials opened Cahn's fence and entered his backyard, where they had a clear view of his home. (*Id.*) Cahn states Highland Park has not prosecuted other residents using Code Section 173.010. (*Id.* ¶ 28.) The violation was heard before Administrative Judge Kenneth Good, who found Cahn not liable and thus dismissed the complaint on June 2, 2011. (*Id.* ¶ 34.) The City appealed Judge Good's ruling. (*Id.* ¶ 35.)

## LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotations omitted). When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed in the light most favorable to the plaintiff; all well-pleaded factual allegations are accepted as true, and all reasonable inferences are construed in the plaintiff's favor. *Id.* However, a

complaint must allege "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007) (*Twombly*). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*Iqbal*). Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Further, the amount of factual allegations required to state a plausible claim for relief depends on the complexity of the legal theory alleged. *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

## ANALYSIS

### Count I

In Count I, Cahn alleges that Defendants entered his property without permission and violated his Fourth Amendment rights under 42 U.S.C. § 1983 to be free from unreasonable search or seizures. (Am. Compl. ¶¶ 37-40.) Cahn alleges that his injuries include "the deprivation of his property" and that these constitutional violations proximately caused him "great mental anguish and humiliation, exposed him to public scandal and disgrace and caused him to incur various expenses." (*Id.* ¶ 40.) Cahn pursues this argument despite its previous rejection in the Court's Opinion issued on March 14, 2012. There, the Court reasoned:

> Cahn's claim fails because he has not sufficiently alleged that the Defendants caused any damage to his property. '[T]he Fourth and Fourteenth Amendments provide a remedy when a citizen's property is unreasonably damaged during a search.' *Cf. Heft v. Moore*, 351 F.3d 278 (7th Cir. 2003) (dismissing plaintiff's Fourth Amendment unreasonable-search claim because she 'failed to show that her property was damaged at all.'); *see also Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011). Cahn has made no allegations that his property was damaged. It is not plausible that an entry onto this property by the City's inspectors in which they

4

> took measurements and photographs could have damaged his property.

*Cahn*, 2012 WL 917855, at * 6. Cahn does not allege any additional injuries or damage to his property, and his argument remains unconvincing. Therefore, Defendants' Motion to Dismiss is granted as to Count I with prejudice.

### Count II

In Count II, Cahn alleges that the City's enforcement of the Code with respect to Cahn's fence violated his rights to equal protection under the Fourteenth Amendment. (Am. Compl. ¶¶ 41-47.) Cahn concedes that he is alleging a "class-of-one claim" under the Equal Protection Clause. A class-of-one claim may arise when a defendant "irrationally targets an individual for discriminatory treatment." *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010) (*Reget*). "In order to bring a class of one equal protection claim, a plaintiff must allege that (1) he has been intentionally treated differently from others similarly situated and (2) there is no rational basis for the difference in treatment, or that the differential treatment is due to a totally illegitimate animus toward the plaintiff by the defendant." *Id.*

Cahn has successfully met the pleading requirement for a class-of-one equal protection claim pursuant to the standard advanced in *Geinosky v. City of Chicago*, 675 F.3d 743, 748 (7th Cir. 2012) (*Geinosky*). In *Geinosky*, the Seventh Circuit held:

> Even in a case where a plaintiff would need to identify a similarly situated person to prove his case . . . we see no basis for requiring the plaintiff to identify the person in the complaint. Rule 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Even the more demanding pleading requirements under *Iqbal* and *Twombly* do not require a plaintiff to identify specific comparators in a complaint.

*Geinosky*, 675 F.3d at 748. Cahn argues the City's handling of the alleged fence violation targeted Cahn in a spiteful manner that had not been pursued against similarly situated residents

5

previously. (Am. Compl. ¶ 43.) In his Amended Complaint, Cahn notes he "is the only individual that Highland Park has prosecuted under Code Section 173.010." (*Id.* ¶ 28.) Cahn has sufficiently pled a class-of-one claim to survive a motion to dismiss. Defendants' Motion to Dismiss is denied as to Count II.

*Count III*

In Count III, Cahn alleges a state-law claim that Defendants maliciously prosecuted Cahn with respect to the charges related to the fence violation. In *Holland v. City of Chicago*, 643 F.3d 248 (7th Cir. 2011), the Seventh Circuit explained the necessary elements to a successful malicious prosecution claim:

> In order to prevail on a malicious prosecution claim, a plaintiff must establish '(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) [special] damages resulting to the plaintiff.' The absence of any single element is fatal to a claim.

*Id.* at 254. Defendants argue that Cahn has failed to meet the requirements of pleading a termination of the proceedings and a special injury.

The Defendants assert Cahn cannot satisfy the element requiring the termination of the proceedings because "the dispute over whether the Replacement Fence complies with the law is currently pending in the Circuit Court of Lake County." (Mot. at 9.) As Cahn's Amended Complaint alleges, "the City of Highland Park appealed the decision of its own Hearing Officer." (Am. Compl. ¶ 35.) Cahn has not pled that the proceeding has terminated.
*Cult Awareness Network v. Church of Scientology, Intern.*, 1685 N.E.2d 1347, 1351 (Ill. 1997) ("The necessity of alleging a favorable termination in actions for malicious prosecution is a long-standing and deeply rooted principle in this court's jurisprudence."). The Circuit Court of Lake County could possibly find in favor of the Defendants. Therefore, based on Plaintiff's own

6

allegations, the proceeding has not yet terminated without prejudice in his favor. Cahn has failed to satisfy the second prong of the test. Defendants' Motion to Dismiss Count III, malicious prosecution, is granted without prejudice.

*Count IV*

In Count IV, Cahn alleges a state-law claim, asserting that Defendants trespassed on his property. Cahn claims the modifications he made to his fence and the presence of city officials on the property to take photographs and measurements of the fence amounted to a trespass. (Resp. at 10-11). Defendants counter that Cahn alleges that the modifications made to the fence were *voluntary*. (Mot. at 10-11). Cahn stated in his Amended Complaint that the modifications made to the fence were both minor and, more importantly, voluntary. (Am. Compl. ¶ 22.) Voluntary modifications cannot later be transformed into a claim for trespass. *Geller v. Brownstone Condominium Ass'n*, 402 N.E. 2d 807, 809 (Ill. App. Ct. 1980) ("to constitute an actionable trespass, an intrusion has to be such as to subtract from the owner's use of the property.").

Moreover, Defendants argue that the lack of interference with Cahn's property is fatal to his claim of trespass. (Mot. at 10-11.) Defendants cite *Loftus v. Mingo*, 511 N.E. 2d 203, 210 (Ill. App. Ct., 1987) (*Loftus*), to support the proposition that interference is a necessary component of a trespass. (Mot. at 10.) In *Loftus*, a police officer parked in the plaintiff's driveway was found not guilty of trespass because of the lack of interference with the possessory right of the property. *Loftus*, 511 N.E. 2d at 210 ("Here, plaintiff has alleged ownership of the real property in question; however, he has failed to allege any wrongful interference with his actual possessory right in that property."). Cahn references *Dial v. O'Fallon*, 81 Ill. 2d 548

(1980), a case decided prior to *Loftus*, to support his argument that it is not necessary to show harm in order for a claim of trespass to survive. (Resp. at 11.)

Here, Cahn's trespass claim confuses physical damage to property on the one hand and interference with possession on the other. The Restatement (Second) of Torts makes it clear that harm is not a required element to prove a trespass: "One who intentionally enters land in the possession of another is subject to liability to the possessor for a trespass, although his presence on the land causes no harm to the land." Restatement (2d) of Torts § 163. However, as in *Loftus*, where a police officer was parked in the plaintiff's driveway, Cahn does not claim the Defendants' actions interfered with the use of his property. (Mot. at 11.) Therefore, Count IV of Cahn's Amended Complaint is dismissed without prejudice.

*Count V*

In Count V of Cahn's Amended Complaint, he alleges a state claim for intentional infliction of emotional distress, resulting from the Defendants' actions. To state a claim for intentional infliction of emotional distress under Illinois law, Cahn must allege: "(1) extreme and outrageous conduct; (2) intent or recklessness to cause emotional distress; (3) severe or extreme emotional distress suffered by the plaintiff; and (4) actual and proximate causation of the emotional distress by defendant's outrageous conduct." *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006) (citing *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976)).

Defendants argue that Cahn has not pled facts sufficient to show that Defendants engaged in extreme and outrageous conduct. (Mot. at 12). Cahn responds that the claim should survive because Defendants were in a position of power over Cahn and that power escalates the extreme quality of the conduct. (Resp. at 11-12). Although the power or authority a defendant has over a

plaintiff is a factor courts consider in evaluating whether conduct is extreme or outrageous, *McGrath v. Fahey*, 533 N.E.2d 806, 809-811 (Ill. 1988), Cahn has failed to include any allegations that remotely rise to the level of extreme or outrageous conduct required to state a claim. Importantly, whether conduct is extreme and outrageous is "evaluated on an objective standard based on all of the facts and circumstances." *Thomas v. Fuerst*, 803 N.E.2d 619, 625 (Ill. App. Ct. 2004). "'Mere insults, indignities, threats, annoyances, petty oppressions, or trivialities" do not qualify as extreme and outrageous conduct." *Kolegas v. Heftel Broadcasting Corp.*, 607 N.E.2d 201, 211 (Ill. 1992) (*Kolegas*).

Cahn has not pled that Defendants' conduct rises to the level of extremity or outrageousness required to satisfy a claim of intentional infliction of emotional distress. Accordingly, Defendants' Motion to Dismiss is granted as to Count V without prejudice.

### *Count VI*

In Count VI, Cahn alleges that the Defendants' prosecution of the fence violation was in retaliation to punish and silence Cahn for his participation in city council meetings. Cahn appears to bring his claim pursuant to Section 1983. Three elements must be satisfied to establish a retaliation claim: (1) Plaintiff's speech must be constitutionally protected; (2) Plaintiff has suffered a deprivation likely to deter free speech; (3) Defendants' actions were motivated by that constitutionally protected speech. *Zellner v. Herrick*, 639 F.3d 371, 378-79 (7th Cir. 2011) (*Zellner*).

Both Plaintiff and Defendants agree the first element of constitutionally protected speech is satisfied. (Mot. at 13, Resp. at 13.) The parties disagree as to whether the second element – whether the actions of the Defendants were likely to deter the Plaintiff's speech – has been met. The Defendants assert that Cahn's continued participation in city council meetings demonstrates

9

otherwise. (Mot. at 14.) These facts, however, are outside Cahn's Amended Complaint and cannot be considered here.

In *Bridges v. Gilbert*, 557 F.3d 541, 552 (2009), the standard for determining whether the deprivation is likely to deter free speech is whether the deprivation would deter a person of ordinary firmness. Cahn argues to meet the standard, he is not required to show he was deterred; rather, Cahn argues to fulfill the second element, he only need show that deprivation is likely to deter his speech. (Resp. at 13). The facts alleged by Cahn are sufficient to permit reasonable inferences that Defendants' deprivation was likely to deter a person of ordinary firmness. *Iqbal*, 129 S.Ct. at 1949.

In addition, the Defendants argue Cahn has not pled the third element of the retaliation claim, because he asserts in his Response, "Plaintiff alleges that *part* of the basis for the retaliation was his active involvement in local politics by way of city council meetings." (Resp. at 13 (emphasis added).) Defendants argue if the participation in the city council meetings was only part of the reason the Defendants proceeded on their course of action, the third prong is not satisfied. However, to fulfill the third prong of the test, Cahn need only show "the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). Cahn has sufficiently pled that Defendants' retaliatory actions were motivated by his vocal participation in city council meetings. Therefore, Defendants' Motion to Dismiss is denied at to Count VI.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is denied in part and granted in part. Count I is dismissed with prejudice. Counts III, IV, and V are dismissed without

prejudice. Defendants' Motion to Dismiss is denied as to Counts II and VI. Cahn may file an amended complaint, consistent with the requirements of Federal Rule of Civil Procedure 11, within thirty days of the entry of this Order.

Date: 9-25-12

JOHN W. DARRAH
United States District Court Judge