IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Joel Cahn, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11 C 6082 |
| | ) | |
| City of Highland Park, Nancy Rotering, and | ) | Judge Darrah |
| Michael Blue, | ) | |
| | ) | |
| Defendants. | ) | **Jury Demanded** |

**SECOND AMENDED COMPLAINT**

Plaintiff, Joel Cahn, by and through his attorneys, Conrad Szewczyk & Associates and Walters O'Brien Law Offices, submits his Second Amended Complaint against the Defendants, The City of Highland Park, Nancy Rotering and Michael Blue, and states as follows:

INTRODUCTION

1. This is a civil action seeking damages against the Defendants for committing acts under color of law, and depriving the Plaintiff of rights secured by the Constitution and laws of the United States.

JURISDICTION

2. That jurisdiction is based on Civil Rights Act 42 USC Section 1983; the judicial code 28 USC 1331 and 1343(a); the Constitution of the United States and pendent jurisdiction as provided under USC section 1367(a)

THE PARTIES

3. That Plaintiff, Joel Cahn is a resident of Lake County the State of Illinois.

4. That Defendants Nancy Rotering, Michael Blue were at the time of this occurrence agents and officers of the City of Highland Park. They were engaged of the conduct complained of while on duty in the course and scope of their employment and under color of law. They are sued in their individual capacities.

5. Defendant City of Highland Park is a Municipal Corporation duly incorporated under the laws of the State of Illinois, and is the principal employer and principal of the individual Defendants.

## FACTUAL BASIS

6. On and before September 1, 2010 the Plaintiff Joel Cahn resided at 26 Lakeview Terrace, Highland Park, Illinois.

7. That on or about said date Nancy Rotering was a member of the Highland Park City Counsel and an immediate neighbor of Joel Cahn who at all times relevant maintained a personal dislike of the Plaintiff.

8. That on or about said date Michael Blue was the Director of Community Development overseeing code related activities including enforcement of code violations.

9. That in May of 2009 the Plaintiff had applied for and was given a permit by the City of Highland Park to construct a replacement fence along the southern border of his property.

10. The replacement fence was the same height and length as the original fence and placed in the same location as the original fence.

11. That the original fence was allowed to be built based upon a variance issued by the City of Highland Park in 1967.

12. That after the replacement fence was built it was inspected and approved by the City of Highland Park Building Department on December 17, 2009.

13. That thereafter Larry Klairmont, a neighbor living on the south side of the replacement fence with close personal ties to Nancy Rotering complained to the City of Highland Park that the replacement fence was in violation of the building code.

14. That Michael Blue of the Community Department Building Division investigated the Klairmont fence complaint through his inspectors and having noted that a permit had been issued and variance granted in 1967 for the original fence, closed the complaint on or before December 22, 2009.

15. That shortly thereafter, on information and belief, Nancy Rotering requested the Community Department Building Division to reopen the Klairmoint fence complaint.

16. That on February 21, 2010 the City of Highland Park Community Department Building Division sent a letter to the Plaintiff indicating his fence was too high and in violation of the City Code and which threatened fines of up to $500.00 per day.

17. That said matter was assigned to City of Highland Park, Community Department Building Division building inspector Timothy Fisher.

18. That in the course of his investigation Timothy Fisher inspected the property, reviewed the complaint, and researched the variance and city Council Minutes for the years 1967 and 1968. Based upon his investigation he concluded the fence was in compliance and recommended to his superior, Michael Blue, that the complaint be closed.

19. That on or about May 27, 2010 the City of Highland Park, Community Department Building Division, sent the Plaintiff a letter indicating his replacement fence was in compliance.

20. That subsequent thereto, upon information and belief, Nancy Rotering, intervened and directed that the Klairmont fence complaint be reopened.

21. That on or about July of 2010 Nancy Rotering and Michael Blue personally inspected the fence in issue.

22. That in August of 2010, Highland Park Building Inspectors Timothy Fisher and Steve Hazer re-inspected the replacement fence. Based on their inspection and some minor voluntary modifications made by the Plaintiff, said inspectors recommended to their superior, Michael Blue, that the matter be closed and that all potential code violation issues were resolved.

23. That on September 1, 2010 a sworn and attested violation notice was issued to the Plaintiff indicating the height of his fence was in violation of Highland Park Code Section 173.010.

24. That on September 24, 2010 the City of Highland Park, Community Department Building Division sent a letter to the Plaintiff indicating the location of his fence was in violation of the variance.

25. That on or about December 9, 2010 the Defendants sent department personnel to the Plaintiff's property to take detailed measurements and photographs of said fence without the permission of the Plaintiff.

26. The City of Highland Park has numerous homes with fences in plain view that have neither been cited nor investigated. On at least two separate occasions, there have been fences within Highland Park that have been in violation of the ordinance. These fences have been and continue to be in plain view. Yet, there is no record of prosecution, much less such a vigorous investigation, by the City for any other such violations.

27. That Joel Cahn is the only individual that Highland Park has prosecuted under Code Section 173.010.

28. That the standard operating procedure for Highland Park in ordinance violation matters is to investigate the matter and either terminate the matter following investigation or bring the person into compliance.

29. That Joel Cahn was also treated differently than other citizens in Highland Park in that his case was reopened several times.

30. That Joel Cahn was prosecuted by Highland Park without evidence of a violation.

31. That the persons in charge of investigating this matter, Theresa Matusek and Michael Blue, were motivated by animus and acted in retaliation both on their own and at the direction of Nancy Rotering.

32. That this animus was a result of previous requests by Joel Cahn to update the Highland Park building code to include structures on the beach, which may have offended certain people. That upon information and belief, based on correspondence between individuals in the City government, which reference Cahn specifically and the existence of animosity in regard to him, Defendants conferred and conspired with each other to determine a violation against Cahn in retaliation for his previous meddling in City affairs.

33. That the violation was heard before Administrative Judge Kenneth Good and zealously prosecuted by the Defendants. That following five days of proceedings, the introduction of over twenty-five exhibits, and the testimony of five witnesses, Judge Good dismissed the complaint on June 2, 2011 with a finding of not liable.

34. That following a finding of not liable, the City of Highland Park appealed the decision of its own Hearing Officer, which it had never done previously.

35. That during the investigation of the Klairmont fence complaint and the prosecution of this matter the Defendants conspired and agreed to falsely charge Joel Cahn with a fence violation although they knew one did not exist.

## COUNT I

Against all Defendants for violation of the Equal Protection Clause of the Fourteenth Amendment.

36. Plaintiff repeats the allegations of paragraphs 1-35 above as if fully set forth here.

4

37. That the investigation and prosecution of the Klairmont fence violation performed willfully and wantonly by Defendants, as detailed above, individually and in conspiracy with the others, were in violation of Plaintiff's right to equal protection under the law pursuant to the 14th Amendment of the Constitution of the United States.

38. That the above action in investigating this matter and prosecuting it was motivated by a spiteful effort to injure the Plaintiff for reasons unrelated to any legitimate municipal objective.

39. Plaintiff has been singled out and selected for prosecution of the fence ordinance, while the several violations that surround him remain unaffected.

40. Further, Defendants have never reopened an allegation of a similar ordinance violation after it was dismissed, much less four (4) times.

41. Furthering the injuries to Plaintiff, after he won the case that the city brought against him regarding the ordinance, Defendants sought to appeal the finding within the Lake County Courthouse, an action that has never been taken by the City of Highland Park.

42. That as a direct and proximate result of the above, plaintiff was injured, including the deprivation of his property. In addition the violations proximately caused the Plaintiff great mental anguish and humiliation, exposed him to public scandal and disgrace and caused him to incur various expenses all to his damage.

Wherefore Plaintiff demands judgment against the Defendants in an amount in excess of $500,000.00 and because the Defendants acted maliciously, wantonly, or oppressively, punitive damages in an amount in excess of $500,000.00 plus the costs of this action, and attorney's fees, and such other relief as the court deems appropriate.

## COUNT II

Against all Defendants for Malicious Prosecution-Pendant State Claim.

36. Plaintiff repeats the allegations of paragraphs 1-35 above as if fully set forth here.

37. That by the actions detailed above, and participating in the above described conspiracy, the individual defendants knowingly sought to and did in fact maliciously prosecute the Plaintiff on false charges of a fence violation.

38. That as a direct and proximate result of the above, plaintiff was injured, including the deprivation of his property. In addition the violations proximately caused the Plaintiff great mental anguish and humiliation, pain and suffering, loss of income, exposed him to public

5

scandal and disgrace and caused him to incur various expenses all to his damage including but not limited to attorneys fees.

      Wherefore Plaintiff demands judgment against the Defendants in an amount in excess of $500,000.00 and in an amount in excess of $500,000.00 plus the costs of this action, and such other relief as the court deems appropriate.

COUNT III

      Against all Defendants for Retaliation Claim.

      36.    Plaintiff repeats the allegations of paragraphs 1-35 above as if fully set forth here.

      37.    That at all times relevant Defendants knew that their actions detailed above were retaliation for individual Defendants' general dislike for Plaintiff.

      38.    Defendants' behavior was also intended to punish and silence Plaintiff who was actively involved in city council meetings and generally outspoken about upholding property rights in the city.

      39.    That as a direct and proximate result of the above, plaintiff was injured, including the deprivation of his property. In addition the violations proximately caused the Plaintiff great mental anguish and humiliation, pain and suffering, loss of income, exposed him to public scandal and disgrace and caused him to incur various expenses all to his damage including but not limited to attorneys fees.

      Wherefore Plaintiff demands judgment against the Defendants in an amount in excess of $500,000.00 plus the costs of this action, and such other relief as the court deems appropriate.

Dated: November 21, 2012                    Respectfully Submitted,

                                                  Walters O'Brien Law Offices,

                                                 By: <u>s/ John O'Brien</u>

Walters O'Brien Law Offices
800 West Huron Street, Suite 4E
Chicago, IL 60642
(312) 428-5890
waltersobrienlawoffice@gmail.com

Conrad Szewczyk & Associates
Attorney for Plaintiff
205 West Randolph Street
Suite 850
Chicago, Illinois  60606
(312) 855-1411

7

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 21, 2012, I electronically filed Plaintiff's Second Amended Complaint with the Clerk of Court and served the aforementioned document to all interested parties by using the CM/ECF system for the United States District Court for the Northern District of Illinois.

                                                       s/ John O'Brien
                                                       one of Plaintiff's attorneys