**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOEL CAHN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 11 C 6082 |
| | ) | |
| v. | ) | Judge John W. Darrah |
| | ) | |
| CITY OF HIGHLAND PARK, NANCY ROTERING, | ) | |
| MICHAEL BLUE, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT

City of Highland Park, Nancy Rotering and Michael Blue (collectively, *"Defendants"*)

answer the Second Amended Complaint as follows:

## INTRODUCTION

1. This is a civil action seeking damages against the Defendants for committing acts under color of law, and depriving the Plaintiff of rights secured by the Constitution and laws of the United States.

**ANSWER**: Defendants deny that they deprived Plaintiff of any rights and deny that

they owe any damages to Plaintiff, but otherwise admit the allegations in Paragraph 1.

## JURISDICTION

2. That jurisdiction is based on Civil Rights Act 42 USC Section 1983; the judicial code 28 USC 1331 and 1343(a); the Constitution of the United States and pendent jurisdiction as provided under USC section 1367(a).

**ANSWER**: Defendants admit the allegations in Paragraph 2.

## THE PARTIES

3. That Plaintiff, Joel Cahn is a resident of Lake County the State of Illinois.

**ANSWER**: Defendants admit the allegations in Paragraph 3.

4. That Defendants Nancy Rotering, Michael Blue were at the time of this occurrence agents and officers of the City of Highland Park. They were engaged of the conduct complained of while on duty in the course and scope of their employment and under color of law. They are sued in their individual capacities.

**ANSWER**: Defendants admit that Nancy Rotering has been an elected official of the City of Highland Park ("City") since May 2009, that Michael Blue has been an employee of the City since May 2002, and that Mr. Blue's involvement with the dispute concerning Plaintiff's fence was in the course and scope of his employment. Defendants deny the remaining allegations in Paragraph 4.

5. Defendant City of Highland Park is a Municipal Corporation duly incorporated under the laws of the State of Illinois, and is the principal employer and principal of the individual Defendants.

**ANSWER**: Defendants admit that the City is a municipal corporation incorporated under the laws of the State of Illinois, and that the City is the principal employer of Michael Blue. Defendants deny the remaining allegations in Paragraph 5.

## FACTUAL BASIS

6. On and before September 1, 2010 the Plaintiff Joel Cahn resided at 26 Lakeview Terrace, Highland Park, Illinois.

**ANSWER**: Defendants lack information sufficient to admit or deny the allegations in Paragraph 6.

7. That on or about said date Nancy Rotering was a member of the Highland Park City Counsel and an immediate neighbor of Joel Cahn who at all times relevant maintained a personal dislike of the Plaintiff.

**ANSWER**: Defendants admit that Nancy Rotering was a member of the Highland Park City Council, and a neighbor of Joel Cahn, on or about September 1, 2010. Defendants deny the remaining allegations in Paragraph 7.

8. That on or about said date Michael Blue was the Director of Community Development overseeing code related activities including enforcement of code violations.

**ANSWER**: Defendants admit that on or about September 1, 2010, Michael Blue was the Director of Community Development for the City, and that his responsibilities included certain oversight and enforcement of certain types of violations of the Highland Park City Code. Defendants deny the remaining allegations in Paragraph 8.

9. That in May of 2009 the Plaintiff had applied for and was given a permit by the City of Highland Park to construct a replacement fence along the southern border of his property.

**ANSWER**: Defendants admit the allegations in Paragraph 9.

10. The replacement fence was the same height and length as the original fence and placed in the same location as the original fence.

**ANSWER**: Defendants deny the allegations in Paragraph 10.

11. That the original fence was allowed to be built based upon a variance issued by the City of Highland Park in 1967.

**ANSWER**: Defendants admit that the City issued a special permit to a prior owner of the property located at 26 Lakeview Terrace, Highland Park, Illinois, with respect to a fence to be constructed on that property. Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 11.

12. That after the replacement fence was built it was inspected and approved by the City of Highland Park Building Department on December 17, 2009.

**ANSWER**: Defendants admit that the City Building Division conducted an inspection of the replacement fence on December 18, 2009. Defendants deny the remaining allegations in Paragraph 12.

13. That thereafter Larry Klairmont, a neighbor living on the south side of the replacement fence with close personal ties to Nancy Rotering complained to the City of Highland Park that the replacement fence was in violation of the building code.

**ANSWER**: Defendants admit that Larry Klairmont resides immediately south of Plaintiff's property and that he has complained to the City about the legality of Plaintiff's replacement fence. Defendants deny the remaining allegations in Paragraph 13.

14. That Michael Blue of the Community Department Building Division investigated the Klairmont fence complaint through his inspectors and having noted that a permit had been issued and variance granted in 1967 for the original fence, closed the complaint on or before December 22, 2009.

**ANSWER**: Defendants admit the City Building Division closed its initial investigation into the Klairmont complaint on or about December 22, 2009. Defendants deny the remaining allegations in Paragraph 14.

15. That shortly thereafter, on information and belief, Nancy Rotering requested the Community Department Building Division to reopen the Klairmoint fence complaint.

**ANSWER**: Defendants deny the allegations in Paragraph 15.

16. That on February 21, 2010 the City of Highland Park Community Department Building Division sent a letter to the Plaintiff indicating his fence was too high and in violation of the City Code and which threatened fines of up to $500.00 per day.

**ANSWER**: Defendants deny the characterization of the letter as "threatening fines" but otherwise admit the allegations in Paragraph 16.

17. That said matter was assigned to City of Highland Park, Community Department Building Division building inspector Timothy Fisher.

**ANSWER**: Defendants admit that Timothy Fisher conducted an investigation into the replacement fence. Defendants deny the remaining allegations in Paragraph 17.

18. That in the course of his investigation Timothy Fisher inspected the property, reviewed the complaint, and researched the variance and city Council Minutes for the years 1967 and 1968. Based upon his investigation he concluded the fence was in compliance and recommended to his superior, Michael Blue, that the complaint be closed.

**ANSWER**: Defendants admit that, at various times, Timothy Fisher inspected Plaintiff's replacement fence, reviewed the complaint about the fence, and researched historical City documents regarding the original fence. Defendants deny that Mr. Fisher consistently concluded that the replacement fence was in compliance but admit that, at one time, Mr. Fisher told Mr. Blue that Mr. Fisher believed the complaint should be closed.

19.     That on or about May 27, 2010 the City of Highland Park, Community Department Building Division, sent the Plaintiff a letter indicating his replacement fence was in compliance.

**ANSWER**:     Defendants admit that on or about May 27, 2010, Timothy Fisher, who was employed by the City in the Building Division, sent Plaintiff a letter indicating his belief the replacement fence was in compliance, and that the Division would consider the matter closed unless further compelling information came to light.

20. That subsequent thereto, upon information and belief, Nancy Rotering, intervened and directed that the Klairmont fence complaint be reopened.

**ANSWER**:     Defendants deny the allegations in Paragraph 20.

21. That on or about July of 2010 Nancy Rotering and Michael Blue personally inspected the fence in issue.

**ANSWER**:     Defendants admit the allegations of Paragraph 21.

22. That in August of 2010, Highland Park Building Inspectors Timothy Fisher and Steve Hazer re-inspected the replacement fence. Based on their inspection and some minor voluntary modifications made by the Plaintiff, said inspectors recommended to their superior, Michael Blue, that the matter be closed and that all potential code violation issues were resolved.

**ANSWER**:     Defendants admit that Plaintiff voluntarily made some modifications to the fence and that Timothy Fisher concluded in August 2010 that the replacement fence was in compliance.  Defendants deny the remaining allegations in Paragraph 22.

23. That on September 1, 2010 a sworn and attested violation notice was issued to the Plaintiff indicating the height of his fence was in violation of Highland Park Code Section 173.010.

**ANSWER**:     Defendants admit that a violation notice dated September 1, 2010, was issued to Plaintiff concerning the replacement fence and that the form includes and acknowledgement that the signator has grounds to believe that Plaintiff had committed a violation.  Defendants deny the remaining allegations in Paragraph 23.

24. That on September 24, 2010 the City of Highland Park, Community Department Building Division sent a letter to the Plaintiff indicating the location of his fence was in violation of the variance.

**ANSWER**: Defendants admit that the City Building Division sent a letter to Plaintiff on or about September 24, 2010, but deny the characterization of that letter.

25. That on or about December 9, 2010 the Defendants sent department personnel to the Plaintiff's property to take detailed measurements and photographs of said fence without the permission of the Plaintiff.

**ANSWER**: Defendants admit that City personnel inspected Plaintiff's fence to evaluate its compliance on or about December 9, 2010. Defendants deny the remaining allegations in Paragraph 25.

26. The City of Highland Park has numerous homes with fences in plain view that have neither been cited nor investigated. On at least two separate occasions, there have been fences within Highland Park that have been in violation of the ordinance. These fences have been and continue to be in plain view. Yet, there is no record of prosecution, much less such a vigorous investigation, by the city for any other such violations.

**ANSWER**: Defendants admit that other homes in Highland Park have fences, and that many homes with fences have not been cited or investigated. Defendants lack information sufficient to admit or deny the allegation that there are fences in violation of the City Code which are in plain view and for which there is no record of prosecution or investigation. Defendants deny the remaining allegations in Paragraph 26.

27. That Joel Cahn is the only individual that Highland Park has prosecuted under Code Section 173.010.

**ANSWER**: Understanding the vague term "prosecuted" to mean the enforcement of Section 173.010, Defendants deny the allegations in Paragraph 27.

28. That the standard operating procedure for Highland Park in ordinance violation matters is to investigate the matter and either terminate the matter following investigation or bring the person into compliance.

**ANSWER**: Defendants admit that when an ordinance violation is brought to the City's attention through a resident complaint, the City typically: investigates the matter; attempts, if appropriate, to secure compliance; and then either terminates the investigation or initiates enforcement procedures. Defendants deny the remaining allegations in Paragraph 28.

29. That Joel Cahn was also treated differently than other citizens in Highland Park in that his case was reopened several times.

**ANSWER**: Defendants deny the allegations in Paragraph 29.

30. That Joel Cahn was prosecuted by Highland Park without evidence of a violation.

**ANSWER**: Defendants deny the allegations in Paragraph 30.

31. That the persons in charge of investigating this matter, Theresa Matusek and Michael Blue, were motivated by animus and acted in retaliation both on their own and at the direction of Nancy Rotering.

**ANSWER**: Defendants deny the allegations in Paragraph 31.

32. That this animus was a result of previous requests by Joel Cahn to update the Highland Park building code to include structures on the beach, which may have offended certain people. That upon information and belief, based on correspondence between individuals in the City government, which reference Cahn specifically and the existence of animosity in regard to him, Defendants conferred and conspired with each other to determine a violation against Cahn in retaliation for his previous meddling in City affairs.

**ANSWER**: Defendants deny the allegations in Paragraph 32.

33. That the violation was heard before Administrative Judge Kenneth Good and zealously prosecuted by the Defendants. That following five days of proceedings, the introduction of over twenty-five exhibits, and the testimony of five witnesses, Judge Good dismissed the complaint on June 2, 2011 with a finding of not liable.

**ANSWER**: Defendants admit that Administrative Hearing Officer Good conducted hearings concerning the violation issued to Plaintiff, that five witnesses testified at the hearing, that over 25 exhibits were introduced at the hearing, and that Hearing Officer Good found Plaintiff not liable on June 2, 2011. Defendants deny the remaining allegations in Paragraph 33.

34. That following a finding of not liable, the City of Highland Park appealed the decision of its own Hearing Officer, which it had never done previously.

**ANSWER**: Defendants admit that the City appealed the decision of the Hearing Officer, and that they can locate no record of having previously appealed the decision of a City's Administrative Hearing Officer.

35. That during the investigation of the Klairmont fence complaint and the prosecution of this matter the Defendants conspired and agreed to falsely charge Joel Cahn with a fence violation although they knew one did not exist.

**ANSWER**: Defendants deny the allegations in Paragraph 35.

## COUNT I

### Against all Defendants for violation of the Equal Protection Clause of the Fourteenth Amendment.

36. Plaintiff repeats the allegations of paragraphs 1-35 above as if fully set forth here.

**ANSWER**: Defendants repeat their answers to Paragraphs 1 through 35 above as if fully set forth herein.

37. That the investigation and prosecution of the Klairmont fence violation performed willfully and wantonly by Defendants, as detailed above, individually and in conspiracy with the others, were in violation of Plaintiff's right to equal protection under the law pursuant to the 14th Amendment of the Constitution of the United States.

**ANSWER**: Defendants deny the allegations in Paragraph 37.

38. That the above action in investigating this matter and prosecuting it was motivated by a spiteful effort to injure the Plaintiff for reasons unrelated to any legitimate municipal objective.

**ANSWER**: Defendants deny the allegations in Paragraph 38.

39. Plaintiff has been singled out and selected for prosecution of the fence ordinance, while the several violations that surround him remain unaffected.

**ANSWER**: Defendants deny the allegations in Paragraph 39.

40. Further, Defendants have never reopened an allegation of a similar ordinance violation after it was dismissed, much less four (4) times.

**ANSWER**: Defendants are unsure what Plaintiff intends to allege with the phrase "reopened an allegation", and to the extent that Plaintiff's allegation is understood to mean

instances where City employees have reached different conclusions, or changed their conclusion

based on new information, Defendants lack information sufficient to admit or deny the

allegations in Paragraph 40.

41. Furthering the injuries to Plaintiff, after he won the case that the city brought against him regarding the ordinance, Defendants sought to appeal the finding within the Lake County Courthouse, an action that has never been taken by the City of Highland Park.

**ANSWER**:    Defendants admit that the City appealed the decision of the City

Administrative Hearing Officer to the Lake County Circuit Court, and admit that its investigation

has revealed no prior appeal by the City of a decision by Administrative Hearing Officer, but

deny that Plaintiff was injured before, or by, such appeal.

42. That as a direct and proximate result of the above, plaintiff was injured, including the deprivation of his property. In addition the violations proximately caused the Plaintiff great mental anguish and humiliation, exposed him to public scandal and disgrace and caused him to incur various expenses all to his damage.

**ANSWER**:    Defendants deny the allegations in Paragraph 42.

**WHEREFORE**, Defendants ask this Court to enter judgment on their behalf, and against

Plaintiff, to dismiss this action, and to award Defendants their costs of suit, attorneys' fees, and

such other and further relief as the Court deems appropriate.

## <u>COUNT II</u>

**Against all Defendants for Malicious Prosecution-Pendant State Claim**.

36.    Plaintiff repeats the allegations on paragraphs 1-35 above as if fully set forth here.

**ANSWER**:    Defendants repeat their answers to Paragraphs 1 through 35 above as if

fully set forth herein.

37.    That by the actions detailed above, and participating in the above described conspiracy, the individual defendants knowingly sought to and did in fact maliciously prosecute the Plaintiff on false charges of a fence violation.

**ANSWER**:    Defendants deny the allegations in Paragraph 37.

38.    That as a direct and proximate result of the above, plaintiff was injured, including the deprivation of his property.  In addition the violations proximately caused the Plaintiff great mental anguish and humiliation, pain and suffering, loss of income, exposed him to public scandal and disgrace and caused him to incur various expenses all to his damage including but not limited to attorneys fees.

**ANSWER**:    Defendants deny the allegations in Paragraph 38.

**WHEREFORE**, Defendants ask this Court to enter judgment on their behalf, and against Plaintiff, to dismiss this action, and to award Defendants their costs of suit, attorneys' fees, and such other and further relief as the Court deems appropriate.

## COUNT III

### Against all Defendants for Retaliation Claim.

36.    Plaintiff repeats the allegations of paragraphs 1-35 above as if fully set forth here.

**ANSWER**:    Defendants repeat their answers to Paragraphs 1 through 35 above as if fully set forth herein.

37.    That at all times relevant Defendants knew that their actions detailed above were retaliation for individual Defendants' general dislike for Plaintiff.

**ANSWER**:    Defendants deny the allegations in Paragraph 37.

38.    Defendants' behavior was also intended to punish and silence Plaintiff who was actively involved in city council meetings and generally outspoken about upholding property rights in the city.

**ANSWER**:    Defendants deny the allegations in Paragraph 38.

39.    That as a direct and proximate result of the above, plaintiff was injured, including the deprivation of his property. In addition the violations proximately caused the Plaintiff great mental anguish and humiliation, pain and suffering, loss of income, exposed him to public scandal and disgrace and caused him to incur various expenses all to his damage including but not limited to attorneys fees.

**ANSWER**:    Defendants deny the allegations in Paragraph 39.

**WHEREFORE**, Defendants ask this Court to enter judgment on their behalf, and against Plaintiff, to dismiss this action, and to award Defendants their costs of suit, attorneys' fees, and such other and further relief as the Court deems appropriate.

<u>**AFFIRMATIVE DEFENSE**</u>

**FAILURE TO MITIGATE DAMAGES**

1.      Plaintiff has a duty to take all reasonable steps to mitigate his damages.

2.      Plaintiff could have avoided the damages he claims in this case by taking the reasonable step of bringing his fence into compliance with the permit, as the City interpreted the terms of that permit.  Through that modest cost, Plaintiff could have avoided this litigation and any damages he claims herein.

Date:  December 18, 2012

<div style="margin-left:45%;">

CITY OF HIGHLAND PARK, NANCY ROTERING, and MICHAEL BLUE

By____/s/ Steven B. Varick_____
            One of Their Attorneys

</div>

Steven M. Elrod (ARDC #6183239)
Steven B. Varick (ARDC #3125566)
Hart M. Passman (ARDC #6287062)
Holland & Knight LLP
131 South Dearborn Street, 30th Floor
Chicago, Illinois 60603
Phone:  (312) 263-3600
Attorneys for Defendants

#11775957_v4

## **CERTIFICATE OF SERVICE**

I, Steven B. Varick, an attorney, certify that I served all parties of record with true and correct copies of Defendants' Answer to Second Amended Complaint by filing a copy thereof in electronic form with the CM/ECF system on December 18, 2012.

                                          _____/s/ Steven B. Varick_____
                                               Steven B. Varick